## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841** | **Misc. No.  18-pr-17**<br><br>**Filed Under Seal** |

*Reference:  USAO Ref. #*▮▮▮▮▮▮*; Subject Account: WhatsApp* ▮▮▮▮▮▮

### *FIRST APPLICATION*

The United States of America, moving by and through Anthony F. Scarpelli, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen register and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the WhatsApp, Inc. ("WhatsApp") account identified as WhatsApp Account ▮▮▮▮▮▮ (hereinafter "SUBJECT ACCOUNT"), the subscriber of which is unknown, which is believed to be used by one of several subjects of the investigation as discussed further below. In support of this application, the United States asserts:

1.  This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen-trap devices.

2.  Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3.      The undersigned applicant is an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.      The law enforcement agency conducting the investigation is the Federal Bureau of Investigation (hereinafter "Agency").

5.      The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Agency.

JURISDICTION

6.      This Court has jurisdiction to issue the requested Order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 3127. 18 U.S.C. § 3122(a)(1). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

ADDITIONAL INFORMATION

7.      Other than the three elements described above, federal law does not require that an application for an order authorizing or extending authorization for the installation and use of pen-trap devices specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize or extend authorization for the installation and use of pen-trap devices under 18 U.S.C. § 3123(a)(1).

8.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a

device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

9.      In the traditional telephone context, pen register devices captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to communications sent over the Internet, as described below.

10.      The Internet is a global network of computers and other devices. Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address. This number is used to route information between devices. Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response. An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content. There are two types of IP addresses: dynamic and static. A static IP address is one that is permanently assigned to a given computer on a network. With dynamic IP addressing, however, each time a computer establishes an Internet connection, that computer is assigned a different IP address. Based on the IP address used for a given online transaction, law enforcement may be able to determine the geographical location of the Internet connection used in the transaction.

11.      A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves. The equipment that connects a computer or other device to the network is commonly referred to as a network adapter. Most network adapters have a Media Access Control

("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

12.    On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

13.    In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web. Port numbers are also used by many wireless carriers as a method for identifying a particular device on the wireless carrier's network.

14.    WhatsApp is a United States company that provides an Internet-based multimedia messaging service, WhatsApp Messenger, via a cross-platform smartphone application that permits users to send and receive messages and calls. WhastApp also permits users of its smartphone application to access their WhatsApp accounts via a desktop or laptop computer.

-4-

15.     The smartphone-based WhatsApp Messenger allows users to exchange, inter alia, text messages, audio messages, video messages, and files such as documents and photos with other WhatsApp users.  It also permits users to engage in real-time voice and video calls and to set up and participate in group chats.  Messages and calls sent through WhatsApp Messenger are transmitted over the Internet via WhatsApp servers located in the United States.  A user may use a cellular provider's data network or another data connection (such as a home wireless router or a public wireless hotspot) to which the user's device is connected to connect to and send messages via WhatsApp Messenger.

16.     Users of WhatsApp Messenger can also access their WhatsApp accounts via a computer using a desktop application or via an Internet browser.  The computer-based WhatsApp service offers similar functionality to the smartphone-based application, including the ability to send and receive text messages, video messages, and files such as photos.

17.     Each WhatsApp account has a unique account identifier in the form of the telephone number of the mobile phone upon which the user has installed the WhatsApp Messenger application.  These phone numbers are used by WhatsApp users to identify the intended recipient of the messages that they send as well as the sender of messages that they receive.  These telephone numbers, which also function as WhatsApp account identifiers, can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's content.

<u>THE RELEVANT FACTS</u>

18.     The United States government, including the Agency, is investigating the distribution of illegal controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.  This narcotics investigation involves the following: ███████████████

19.     As described above, the conduct being investigated involves use of the SUBJECT ACCOUNT.  To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from, the SUBJECT ACCOUNT.

20.     The pen-trap devices sought by this application could record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and with each communication to or from, the SUBJECT ACCOUNT, including the date, time, and duration of the communication, without geographic limit;

### GOVERNMENT REQUESTS

21.     For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each access to, and each communication to or from, the SUBJECT ACCOUNT, to include the date, time, and duration of the communication, without geographic limit.  The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

22.     The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days from the date of the Court's Order, pursuant to 18 U.S.C. § 3123(c)(1).

23.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order WhatsApp (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order, furnish the Agency forthwith all information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the Agency, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the Order.

24.     The United States further requests that the Court order the Service Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNT, including changes to subscriber information, and to provide prior notice to the applicant and the Agency before terminating or changing service to the SUBJECT ACCOUNT.

25.     The United States further requests that the Court order that the Agency and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

26.     The United States further requests that the Court order that Attachment A, which is incorporated by reference in the proposed Order and which identifies the name(s) of the person(s) under investigation, remain under seal and withheld from service upon the Service Provider.  The information in Attachment A is not needed by the Service Provider, and doing so will help safeguard both the privacy interests of unindicted and uncharged individuals and the integrity of

the government's ongoing investigation. As the Court is aware, persons identified by law enforcement as "subjects" at the investigative stage of a case may ultimately never be indicted or charged with any crimes. Yet providing the identities of such persons to commercial entities as "subjects" needlessly exposes those persons to non-law-enforcement entities, and risks further exposure should service providers become careless with such information or themselves have that information breached or "hacked" by other parties. At the same time, exposing the identities of persons considered "subjects" to service providers also puts investigations at risk, inasmuch as persons who become aware of their identification as "subjects" can flee and destroy evidence, etc. To be sure, Section 3123(d) contemplates the sealing of the Court's Order, and that service providers will comply and keep the existence of the Order secret. But especially in the age of "internet hacking," it is unwise to impart identification information to third parties when that information is simply not required by those third parties and its exposure risks needless harm.

27.     The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Provider and any other person or entity whose assistance facilitates execution of the Court's Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and the Court's Order, the resulting pen-trap devices, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice.

28.     The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

29.     The United States further requests that the Clerk of the Court provide the United

States Attorney's Office with three certified copies of this application and the Court's Order upon

request, and provide copies of the Order to the Agency upon request.

30.     The foregoing is based on information provided to me in my official capacity by

agents of the Agency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 24th day of January, 2018.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
DC Bar No. 472845

_____/s/_____
ANTHONY F. SCARPELLI
DC Bar No. 474711
WILLIAM SCHURMANN
D.C. Bar No. 991284
Assistant United States Attorneys
Violent Crime and Narcotics Trafficking Section
555 4th Street, N.W.
Washington, D.C.  20530
Office: 202-252-7707 (Scarpelli)
Office: 202-252-7725 (Schurmann)
Anthony.Scarpelli@usdoj.gov
William.Schurmann@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841** | **Misc. No. 18-pr-17** <br><br> **Filed Under Seal** |

### ORDER

Anthony F. Scarpelli, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on the WhatsApp, Inc. ("WhatsApp") account identified as WhatsApp Account ████████ the subscriber of which is unknown (hereinafter "SUBJECT ACCOUNT"), which is believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Sections 841(a)(1) and 846. The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the SUBJECT ACCOUNT, including the date, time, and duration of the communication, without geographic limit;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that WhatsApp (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNT, including changes to subscriber information,

and to provide prior notice to the Agency before terminating or changing service to the SUBJECT ACCOUNT;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

United States Magistrate Judge

-3-

## ATTACHMENT A

Person(s) identified as subject(s) of investigation:

Unknown Female and Unknown Male

Case 1:18-pr-00017-DAR *SEALED*   Document 2   Filed 02/06/18   Page 1 of 1

**FILED**

FEB - 6 2018

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. [§] 841 | No. 18-pr-00017 *SEALED* |
|---|---|

## ORDER

On February 2, 2018 the undersigned filed six orders (*see* Misc. No. 17-████ Misc. No.

17████ Misc. No. 17-████ No. 18-pr████, No. 18-pr████, No. 18-pr-████) with respect

to six separate applications for authorization to install and use pen register and trap-and-trace

devices for WhatsApp accounts designated only by a WhatsApp account number. For the reasons

set forth in those orders, it is, this 5th day of February, 2018, hereby

**ORDERED** that the above-captioned application is **DENIED WITHOUT PREJUDICE**.

Counsel may proceed as directed in the six orders filed on February 2, 2018.

DEBORAH A. ROBINSON
United States Magistrate Judge



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. § 841** | **Case No. 18-pr-00017**<br><br>**Filed Under Seal** |

### *EX PARTE* OBJECTION TO THE MAGISTRATE JUDGE'S DENIAL OF APPLICATION OF THE UNITED STATES FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT

The United States of America, through undersigned counsel, respectfully submits, under seal, its objection to United States Magistrate Judge Deborah A. Robinson's February 6, 2018, order, which denied the above-referenced application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen register and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the WhatsApp, Inc. ("WhatsApp") accounts identified in the applications.

Magistrate Judge Robinson denied the United States's January 25, 2018, request, apparently for the reason that the application has designated the account only by a WhatsApp account number.[1]

---

[1] The Magistrate Judge's decision stated the denial was "[f]or the reasons set forth in th[e] orders" denying "six separate applications for authorization to install" pen-trap devices "for WhatsApp accounts designated only by a WhatsApp account number" in the following sealed case numbers: Misc. Nos. 17-███ 17-███ 17-███ PR Nos. 18-███ 18-███ and 18-███. *See* 18-pr-00017 Order dated February 6, 2018. Unfortunately, those cases were sealed – and were not handled by the U.S. Attorney's Office for the District of Columbia. Thus, initially, prosecutors were unable to access the cases and determine the reason for the denial. Rather, these cases were handled by the Department of Justice's Narcotics and Dangerous Drugs ("NDDS") Section. When prosecutors in this case obtained a copy of that order from NDDS, the reason for the denial was that that "[t]he United States does not provide the cellular telephone number associated with the designated WhatsApp account; nor does the United States identify the provider of such cellular telephone service, seemingly utilizing 'WhatsApp' and 'Service Provider' interchangeably" but

However, the issue is not complicated.  A phone number is not necessary to identify a

WhatsApp account, nor to implement the requested order, since the order would be served on

WhatsApp.  Legally, the statute does not require a phone number.  Moreover, the Court has

approved templates for social media accounts which by definition use "other identifiers" apart

from telephone numbers.  Thus, courts have issued similar pen-trap orders on various accounts,

such as email accounts, that do not have phone numbers.  *See* 18 U.S.C. § 3123(b)(1)(C)

(permitting "number or other identifier" to be specified in the order); 18 U.S.C. § 3123(a)(1) (order

"shall apply to any person or entity providing wire or electronic communication service").

Because the WhatsApp account number identifies the requested account, and the provider

is WhatsApp, the government's application easily meets the statutory requirements, and the Court

should issue the requested order promptly.  A copy of the original application and proposed order

is attached hereto as Exhibit C.

## I.  **PROCEDURAL NOTE**

The legal issue here is the same as in the NDDS cases.  There, NDDS filed an amended

application with the Magistrate Judge on February 13, 2018, explaining the uncontroversial and

clear basis for the order sought.[2]  As such, the government in this case initially determined to await

resolution of the NDDS applications.  However, because over two weeks have passed without

response from the Court to that amended application, and because of the need for the order as part

---

rather designated the accounts "only by a WhatsApp account number."  *See* Misc No. 17-███ *et
al.* Order dated February 2, 2018.  Copies of the order in this case (18-pr-00017) and the order in
the NDDS cases (Misc. Nos. 17-███, 17-███, 17-███, PR Nos. 18-███ 18-███ and
18-███) are attached hereto as Exhibits A and B.

[2] The government understands that the NDDS applications (Misc. Nos. 17-███, 17-
███, 17-███, PR Nos. 18-███, 18-███, and 18-███), were filed on or about January
26, 2018.  NDDS received a denial order on Monday, February 5; the order was dated Friday,
February 2.

of an ongoing investigation, the government files this objection seeking immediate relief.

## II. ARGUMENT

The Court should grant the above-referenced applications for orders pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the WhatsApp account identified in the applications.

WhatsApp is a United States company that "provides messaging, Internet calling, and other services to users around the world." WhatsApp, Information for Law Enforcement Authorities, https://faq.whatsapp.com/en/general/26000050/?category=5245250 (last visited February 10, 2018). WhatsApp Messenger is a cross-platform smartphone application that permits users to send and receive messages and calls. Messages and calls sent through WhatsApp Messenger are transmitted over the Internet via WhatsApp servers located in the United States. A user may utilize a cellular provider's data network or another data connection (such as a home wireless router or a public wireless hotspot) to which the user's device is connected in order to connect to and send messages via WhatsApp Messenger. *See* WhatsApp, Features, https://www.whatsapp.com/features/ (last visited February 10, 2018) ("WhatsApp uses your phone's Internet connection to send messages so you can avoid SMS [short message service] fees.").

Each WhatsApp account has a unique account identifier. According to computer scientists in the DEA's Office of Investigative Technology, after WhatsApp is downloaded to a smart phone capable of running mobile applications, a user must then input a phone number, which will be used by WhatsApp to confirm the creation of the account. A user then has a WhatsApp account number that is the same as the inputted phone number, but the user need not have downloaded the WhatsApp application to the device bearing that phone number. This account number, which may

be operating entirely separately from the phone used to confirm creation of the account, is utilized by other WhatsApp users to identify the intended recipient of the messages that they send as well as the sender of messages that they receive.  Users of WhatsApp need not even use only a cellular phone to view their account, which can also be accessed via a desktop or laptop computer.

Because the United States seeks information related to the Subject Accounts' communications occurring over WhatsApp only, that is, because WhatsApp itself will be the relevant service provider receiving and implementing the requested order, the WhatsApp account number is the appropriate "number or other identifier" to be specified in the order.  18 U.S.C. § 3123(b)(1)(C).  As previously discussed, a WhatsApp account number is numerically the same as the inputted phone number used to confirm the creation of the account. However, that is just WhatsApp's naming convention; that is, WhatsApp need not be operating on the device bearing that phone number. Similar to the way BlackBerry Messenger users use BlackBerry PINs, or E-mail users utilize E-mail addresses, WhatsApp users utilize WhatsApp account numbers to identify the intended recipient of the messages that they send as well as the sender of messages that they receive. These WhatsApp account numbers can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's content. *See, e.g.*, *In Matter of Application of U.S. for an Order Authorizing the Installation and Use of a Pen Register and a Trap & Trace Device on E-mail Account*, 416 F. Supp. 2d 13, 16 (D.D.C. 2006) (holding that government may obtain pen-trap device on E-mail communications and other "similar signals transmitted over the internet"). Because the United States seeks only WhatsApp information—namely, information related to communications occurring over WhatsApp servers located in the United States—any cellular telephone numbers associated with the devices on which

WhatsApp Messenger is installed are not relevant. A WhatsApp account number is the only appropriate identifying information to be included in the order. 18 U.S.C. § 3123(b)(1)(C).

WhatsApp is the applicable service provider for a pen-trap device directed to a WhatsApp account number. Applying a pen-trap device to a service provider other than a provider of cellular service is consistent with the pen-trap statute, which directs that a pen-trap order "shall apply to *any* person or entity providing wire or *electronic communication service* in the United States." 18 U.S.C. § 3123(a)(1) (emphasis added). WhatsApp provides an electronic communication service because it "provides users with the ability to send and receive electronic communications to each other." *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2705(b)*, -- F. Supp. 3d --, 2018 WL 692923, *5 (D.D.C. Jan. 30, 2018). Because the Government is seeking only information relating to the communications occurring through WhatsApp Messenger, WhatsApp is the appropriate entity to provide this information.[3] Messages and calls sent through WhatsApp are not transmitted by the cellular telephone service provider, but rather are transmitted over the Internet via WhatsApp's U.S. servers. As discussed, a user may access the Internet in a variety of ways in order to send or receive messages, including using a home wireless router or a public wireless hotspot. Therefore, the cellular telephone service provider of the cellular telephone on which the Subject Accounts operate is not necessarily relevant, and is not an attribute "of the communications to which the order applies." 18 U.S.C. § 3123(b)(1)(C).

Further, in developing the Court's CM/ECF program for sealed legal process, the Chief Judge of this Court has recently reviewed and approved the use of various templates, including

---

[3] To be sure, the applicable service provider need not be named in a pen-trap order. *See* 18 U.S.C. § 3123(a)(1) (setting forth procedures for serving an order "on any person or entity not specifically named in the order").

templates for pen register and trap and trace applications and orders in different contexts, such as

e-mail and social media. That is, the Chief Judge has approved templates for social media accounts

which by definition use "other identifiers" apart from telephone numbers, underscoring the

conclusion that the statute does not require the government to submit a telephone number and its

service provider to obtain an order for web-based communications.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant the

government's application and issue the requested PRTT order under 18 U.S.C. §§ 3122 and 3123.

Respectfully submitted,

JESSE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By: _____

Anthony Scarpelli
Jonathan P. Hooks
Assistant United States Attorneys
DC Bar #474711 (Scarpelli)
DC Bar #468570 (Hooks)
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7707 (Scarpelli)
Telephone: 202-252-7796 (Hooks)
Email: jonathan.hooks@usdoj.gov

DATE: February 27, 2018

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841 | Misc. No. 18-pr-17 <br><br> **Filed Under Seal** |

## ORDER

Anthony F. Scarpelli, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on the WhatsApp, Inc. ("WhatsApp") account identified as WhatsApp Account ▮▮▮▮▮▮ the subscriber of which is unknown (hereinafter "SUBJECT ACCOUNT"), which is believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Sections 841(a)(1) and 846. The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from, the SUBJECT ACCOUNT, including the date, time, and duration of the communication, without geographic limit;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that WhatsApp (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNT, including changes to subscriber information,

-2-

and to provide prior notice to the Agency before terminating or changing service to the SUBJECT ACCOUNT;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).


                                        _____
                                        BERYL A. HOWELL, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT
                                        FOR THE DISRICT OF COLUMBIA

## **ATTACHMENT A**

Person(s) identified as subject(s) of investigation:

Unknown Female and Unknown Male

Case 1:18-pr-00017-DAR    Document 8-1    Filed 03/13/18    Page 25 of 58
Case 1:18-pr-00017-DAR *SEALED*    Document 3-1    Filed 02/28/18    Page 5 of 21
Case 1:18-pr-00017-DAR *SEALED*    Document 2    Filed 02/06/18    Page 1 of 1

**FILED**

FEB -6 2018

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. [§] 841 | No. 18-pr-00017 *SEALED* |

### ORDER

On February 2, 2018 the undersigned filed six orders (*see* Misc. No. 17-███ Misc. No.

17███ Misc. No. 17-███, No. 18-pr-███, No. 18-pr-███ No. 18-pr-███ with respect

to six separate applications for authorization to install and use pen register and trap-and-trace

devices for WhatsApp accounts designated only by a WhatsApp account number.  For the reasons

set forth in those orders, it is, this 5th day of February, 2018, hereby

**ORDERED** that the above-captioned application is **DENIED WITHOUT PREJUDICE.**

Counsel may proceed as directed in the six orders filed on February 2, 2018.

DEBORAH A. ROBINSON
United States Magistrate Judge



GOVERNMENT
EXHIBIT

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR THREE WHATSAPP ACCOUNTS FOR INVESTIGATION OF VIOLATION OF 8 U.S.C. § 1324 | Misc. No. 17-███ *SEALED* |
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR EIGHTEEN WHATSAPP ACCOUNTS FOR INVESTIGATION OF VIOLATION OF 8 U.S.C. § 1324 | Misc. No. 17-███ *SEALED* |
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNTS FOR INVESTIGATION OF VIOLATION OF 8 U.S.C. § 1324 | Misc. No. 17-███ *SEALED* |
| IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 8 U.S.C. § 1324 | Pen Register No. 18-███ *SEALED* |
| IN RE APPLICATION OF USA FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 959 | Pen Register No. 18-███ *SEALED* |

GOVERNMENT
EXHIBIT
B

In re Miscellaneous and Pen Register Applications                                             2

> **IN RE APPLICATION OF USA FOR**
> **PRTT ORDER FOR THIRTEEN**
> **WHATSAPP ACCOUNTS FOR**
> **INVESTIGATION OF VIOLATION OF**
> **21 U.S.C. § 846, 959, 963**

Pen Register No. 18-███
*SEALED*

### ORDER

In each of the above-captioned applications, the United States seeks authorization for the installation and use of pen register and trap-and-trace devices, *see* 18 U.S.C. §§ 3122, 3123, with respect to a WhatsApp account designated only by a WhatsApp account number. The United States does not provide the cellular telephone number associated with the designated WhatsApp account; nor does the United States identify the provider of such cellular telephone service, seemingly utilizing "WhatsApp" and "Service Provider" interchangeably. *Compare* 1:18-pr-00008 (providing the cellular telephone number, and identifying WhatsApp, Inc. as the entity which "issued" the cellular telephone number).

It is, therefore, this 2nd day of February, 2018, hereby

**ORDERED** that counsel for the United States shall supplement each application (1) to provide the cellular telephone number, and corresponding cellular telephone service provider, onto which the WhatsApp smartphone application has been installed, or (2) to provide the authority on which the United States relies for the proposition that an order pursuant to 18 U.S.C. §§ 3122, 3123 is appropriately entered absent such information; and it is

In re Miscellaneous and Pen Register Applications                                    3

**FURTHER ORDERED** that in the interim, each of the above-captioned applications is

**DENIED WITHOUT PREJUDICE.**

DEBORAH A. ROBINSON
United States Magistrate Judge

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 29 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 9 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1   Filed 01/25/18   Page 1 of 9

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841** | **Misc. No. 18-pr-17** <br><br> **Filed Under Seal** |

*Reference: USAO Ref. #*████████*; Subject Account: WhatsApp* ████████

### *FIRST APPLICATION*

The United States of America, moving by and through Anthony F. Scarpelli, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen register and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the WhatsApp, Inc. ("WhatsApp") account identified as WhatsApp Account ████████ (hereinafter "SUBJECT ACCOUNT"), the subscriber of which is unknown, which is believed to be used by one of several subjects of the investigation as discussed further below. In support of this application, the United States asserts:

1.      This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen-trap devices.

2.      Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).



Case 1:18-pr-00017-DAR  Document 8-1  Filed 03/13/18  Page 30 of 58
Case 1:18-pr-00017-DAR *SEALED*  Document 3-1  Filed 02/28/18  Page 10 of 21
Case 1:18-pr-00017-DAR *SEALED*  Document 1  Filed 01/25/18  Page 2 of 9

3.      The undersigned applicant is an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4.      The law enforcement agency conducting the investigation is the Federal Bureau of Investigation (hereinafter "Agency").

5.      The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Agency.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested Order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 3127. 18 U.S.C. § 3122(a)(1). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237.

## ADDITIONAL INFORMATION

7.      Other than the three elements described above, federal law does not require that an application for an order authorizing or extending authorization for the installation and use of pen-trap devices specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize or extend authorization for the installation and use of pen-trap devices under 18 U.S.C. § 3123(a)(1).

8.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a

-2-

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 31 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 11 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1   Filed 01/25/18   Page 3 of 9

device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

9.     In the traditional telephone context, pen register devices captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to communications sent over the Internet, as described below.

10.     The Internet is a global network of computers and other devices. Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address. This number is used to route information between devices. Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response. An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content. There are two types of IP addresses: dynamic and static. A static IP address is one that is permanently assigned to a given computer on a network. With dynamic IP addressing, however, each time a computer establishes an Internet connection, that computer is assigned a different IP address. Based on the IP address used for a given online transaction, law enforcement may be able to determine the geographical location of the Internet connection used in the transaction.

11.     A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves. The equipment that connects a computer or other device to the network is commonly referred to as a network adapter. Most network adapters have a Media Access Control

-3-

Case 1:18-pr-00017-DAR  Document 8-1  Filed 03/13/18  Page 32 of 58
Case 1:18-pr-00017-DAR *SEALED*  Document 3-1  Filed 02/28/18  Page 12 of 21
Case 1:18-pr-00017-DAR *SEALED*  Document 1  Filed 01/25/18  Page 4 of 9

("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

12. On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

13. In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web. Port numbers are also used by many wireless carriers as a method for identifying a particular device on the wireless carrier's network.

14. WhatsApp is a United States company that provides an Internet-based multimedia messaging service, WhatsApp Messenger, via a cross-platform smartphone application that permits users to send and receive messages and calls. WhastApp also permits users of its smartphone application to access their WhatsApp accounts via a desktop or laptop computer.

-4-

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 33 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 13 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1   Filed 01/25/18   Page 5 of 9

15.     The smartphone-based WhatsApp Messenger allows users to exchange, inter alia, text messages, audio messages, video messages, and files such as documents and photos with other WhatsApp users. It also permits users to engage in real-time voice and video calls and to set up and participate in group chats. Messages and calls sent through WhatsApp Messenger are transmitted over the Internet via WhatsApp servers located in the United States. A user may use a cellular provider's data network or another data connection (such as a home wireless router or a public wireless hotspot) to which the user's device is connected to connect to and send messages via WhatsApp Messenger.

16.     Users of WhatsApp Messenger can also access their WhatsApp accounts via a computer using a desktop application or via an Internet browser. The computer-based WhatsApp service offers similar functionality to the smartphone-based application, including the ability to send and receive text messages, video messages, and files such as photos.

17.     Each WhatsApp account has a unique account identifier in the form of the telephone number of the mobile phone upon which the user has installed the WhatsApp Messenger application. These phone numbers are used by WhatsApp users to identify the intended recipient of the messages that they send as well as the sender of messages that they receive. These telephone numbers, which also function as WhatsApp account identifiers, can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's content.

## THE RELEVANT FACTS

18.     The United States government, including the Agency, is investigating the distribution of illegal controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. This narcotics investigation involves the following:  █████████████

-5-

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 34 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 14 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1   Filed 01/25/18   Page 6 of 9

19. As described above, the conduct being investigated involves use of the SUBJECT ACCOUNT. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from, the SUBJECT ACCOUNT.

20. The pen-trap devices sought by this application could record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and with each communication to or from, the SUBJECT ACCOUNT, including the date, time, and duration of the communication, without geographic limit;

GOVERNMENT REQUESTS

21. For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each access to, and each communication to or from, the SUBJECT ACCOUNT, to include the date, time, and duration of the communication, without geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

22. The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days from the date of the Court's Order, pursuant to 18 U.S.C. § 3123(c)(1).

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 35 of 58
Case 1:18-pr-00017-DAR *SEALED*  Document 3-1   Filed 02/28/18   Page 15 of 21
Case 1:18-pr-00017-DAR *SEALED*  Document 1   Filed 01/25/18   Page 7 of 9

23.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order WhatsApp (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order, furnish the Agency forthwith all information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the Agency, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the Order.

24.     The United States further requests that the Court order the Service Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNT, including changes to subscriber information, and to provide prior notice to the applicant and the Agency before terminating or changing service to the SUBJECT ACCOUNT.

25.     The United States further requests that the Court order that the Agency and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

26.     The United States further requests that the Court order that Attachment A, which is incorporated by reference in the proposed Order and which identifies the name(s) of the person(s) under investigation, remain under seal and withheld from service upon the Service Provider. The information in Attachment A is not needed by the Service Provider, and doing so will help safeguard both the privacy interests of unindicted and uncharged individuals and the integrity of

Case 1:18-pr-00017-DAR  Document 8-1  Filed 03/13/18  Page 36 of 58
Case 1:18-pr-00017-DAR *SEALED*  Document 3-1  Filed 02/28/18  Page 16 of 21
Case 1:18-pr-00017-DAR *SEALED*  Document 1  Filed 01/25/18  Page 8 of 9

the government's ongoing investigation. As the Court is aware, persons identified by law enforcement as "subjects" at the investigative stage of a case may ultimately never be indicted or charged with any crimes. Yet providing the identities of such persons to commercial entities as "subjects" needlessly exposes those persons to non-law-enforcement entities, and risks further exposure should service providers become careless with such information or themselves have that information breached or "hacked" by other parties. At the same time, exposing the identities of persons considered "subjects" to service providers also puts investigations at risk, inasmuch as persons who become aware of their identification as "subjects" can flee and destroy evidence, etc. To be sure, Section 3123(d) contemplates the sealing of the Court's Order, and that service providers will comply and keep the existence of the Order secret. But especially in the age of "internet hacking," it is unwise to impart identification information to third parties when that information is simply not required by those third parties and its exposure risks needless harm.

27.     The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order the Service Provider and any other person or entity whose assistance facilitates execution of the Court's Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and the Court's Order, the resulting pen-trap devices, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice.

28.     The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

-8-

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 37 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 17 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1   Filed 01/25/18   Page 9 of 9

29.     The United States further requests that the Clerk of the Court provide the United

States Attorney's Office with three certified copies of this application and the Court's Order upon

request, and provide copies of the Order to the Agency upon request.

30.     The foregoing is based on information provided to me in my official capacity by

agents of the Agency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 24th day of January, 2018.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
DC Bar No. 472845

_____/s/_____

ANTHONY F. SCARPELLI
DC Bar No. 474711
WILLIAM SCHURMANN
D.C. Bar No. 991284
Assistant United States Attorneys
Violent Crime and Narcotics Trafficking Section
555 4th Street, N.W.
Washington, D.C.  20530
Office: 202-252-7707 (Scarpelli)
Office: 202-252-7725 (Schurmann)
Anthony.Scarpelli@usdoj.gov
William.Schurmann@usdoj.gov

Case 1:18-pr-00017-DAR  Document 8-1  Filed 03/13/18  Page 38 of 58
Case 1:18-pr-00017-DAR *SEALED*  Document 3-1  Filed 02/28/18  Page 18 of 21
Case 1:18-pr-00017-DAR *SEALED*  Document 1-1  Filed 01/25/18  Page 1 of 4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841** | Misc. No. **18-pr-17**<br><br>**Filed Under Seal** |

### ORDER

Anthony F. Scarpelli, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on the WhatsApp, Inc. ("WhatsApp") account identified as WhatsApp Account ██████████ the subscriber of which is unknown (hereinafter "SUBJECT ACCOUNT"), which is believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Sections 841(a)(1) and 846. The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 39 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 19 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1-1   Filed 01/25/18   Page 2 of 4

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from, the SUBJECT ACCOUNT, including the date, time, and duration of the communication, without geographic limit;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that WhatsApp (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNT, including changes to subscriber information,

-2-

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 40 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 20 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1-1   Filed 01/25/18   Page 3 of 4

and to provide prior notice to the Agency before terminating or changing service to the SUBJECT ACCOUNT;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

_____
United States Magistrate Judge

-3-

Case 1:18-pr-00017-DAR   Document 8-1   Filed 03/13/18   Page 41 of 58
Case 1:18-pr-00017-DAR *SEALED*   Document 3-1   Filed 02/28/18   Page 21 of 21
Case 1:18-pr-00017-DAR *SEALED*   Document 1-1   Filed 01/25/18   Page 4 of 4

## ATTACHMENT A

Person(s) identified as subject(s) of investigation:

Unknown Female and Unknown Male

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. § 841 | Case No. 18-pr-00017 |
| | Chief Judge Beryl A. Howell |
| | **UNDER SEAL** |

**MEMORANDUM OPINION**

In February 2018, the government sought an order, pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing the installation and use of pen register and trap and trace devices ("PR/TT devices") on a specific WhatsApp, Inc. ("WhatsApp") account. *See* First Application ("App.") at 1, ECF No. 1. Although the application contained the WhatsApp account number for the account in question, the application was denied by a Magistrate Judge on the ground that the application lacked "the cellular telephone number associated with the designated WhatsApp account" and "the provider of such cellular telephone service." *See* Order, dated Feb. 2, 2018 ("Consolidated Order") at 2, *In re Application of USA for PRTT Order*, No. 17-mc-■■■, ECF No. 6; Order, dated Feb. 5, 2018 ("Order"), ECF No. 2 (denying the application at issue in this matter for the reasons stated in the Consolidated Order). Now pending before the Court is the government's *Ex Parte* Objection to the Magistrate Judge's Denial of Application of the United States for PRTT Order for One WhatsApp Account ("Obj."), ECF No. 3. For the reasons stated herein, a WhatsApp account number is sufficient information to install and use a PR/TT device on a WhatsApp account. Accordingly, the government's objection is sustained, the Magistrate Judge's order is reversed, and the government's application is granted.

## I.     BACKGROUND

The procedural history of this matter is summarized briefly below, followed by a description of WhatsApp's electronic communication services as relevant to the application at issue.

### A.     Procedural History

On January 25, 2018, the government filed an application, pursuant to 18 U.S.C. §§ 3122 and 3123, for an order "authorizing the installation and use of pen register and trap and trace devices ('pen-trap devices') to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each access to, and each communication to or from," a specific WhatsApp account number in use by one of several subjects of an ongoing criminal investigation. App. at 1. In support of this application, the government asserted that "[e]ach WhatsApp account has a unique account identifier in the form of the telephone number of the mobile phone upon which the user has installed the WhatsApp Messenger application," and that "[t]hese telephone numbers, which also function as WhatsApp account identifiers, can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's content." *Id.* ¶ 17.

That application was denied by a Magistrate Judge in an order dated February 5, 2018, "[f]or the reasons set forth" in a consolidated order, issued three days earlier by the same Magistrate Judge, denying six similar applications for the use of PR/TT devices on WhatsApp accounts. Order at 1.[1] Those six applications were filed between January 25, 2018, and January 29, 2018, and, like the application at issue in this matter, requested orders "authorizing the

---

[1]     Initially, the government did not have access to the Consolidated Order and therefore was unable to determine the reasons for the denial. *See* Obj. at 1 n.1. Recognizing this problem, on February 9, 2018, a different Magistrate Judge issued an order in this matter "explain[ing] the rationale underlying" the prior orders. Order, dated Feb. 9, 2018 at 1, ECF No. 4.

installation and use of pen register and trap and trace devices" on specific WhatsApp accounts.

Second Application at 1, *In re Application of USA for PRTT Order*, No. 17-mc-██, ECF No. 5;

*see also* Second Application at 1, *In re Application of USA for PRTT Order*, No. 17-mc-██

ECF No. 3; Second Application at 1, *In re Application of USA for PRTT Order*, No. 17-mc-██

ECF No. 3; First Application at 1, *In re Application of USA for PRTT Order*, No. 18-pr-██ ECF

No. 1; Application at 1, *In re Application of USA for PRTT Order*, No. 18-pr-██ ECF No. 1;

Application at 1, *In re Application of USA for PRTT Order*, No. 18-pr██ ECF No. 1.[2]

The Magistrate Judge denied those six applications on February 2, 2018, noting that the

government "d[id] not provide the cellular telephone number associated with the designated

WhatsApp account; nor d[id] the United States identify the provider of such cellular telephone

service, seemingly utilizing 'WhatsApp' and 'Service Provider' interchangeably." Consolidated

Order at 2. The government was directed to "supplement each application (1) to provide the

cellular telephone number, and corresponding cellular telephone service provider, onto which the

WhatsApp smartphone application has been installed, or (2) to provide the authority on which

the United States relies for the proposition that an order pursuant to 18 U.S.C. §§ 3122, 3123 is

appropriately entered absent such information." *Id.* The government submitted supplemental

material in each of those six cases between February 13, 2018, and February 15, 2018, asserting,

*inter alia*, that a user's "WhatsApp account number [ ] is the same as the inputted phone

number," that "WhatsApp itself will be the relevant service provider receiving and implementing

the requested order," and that "WhatsApp is the applicable service provider for a pen-trap device

---

[2]       In three of those cases, applications for PR/TT devices on the given WhatsApp accounts previously had
been granted. *See, e.g.*, Order, dated Nov. 29, 2017, *In re Application of USA for PRTT Order*, No. 17-mc-██
ECF No. 2 (granting first application in Misc. No. 17-██); Order, dated Dec. 11, 2017, *In re Application of USA
for PRTT Order*, No. 17-mc██, ECF No. 4 (granting renewed first application in Misc. No. 17-██); Order,
dated Dec. 1, 2017, *In re Application of USA for PRTT Order*, No. 17-mc-██ ECF No. 2 (granting first
application in Misc. No. 17██); Order, dated Dec. 1, 2017, *In re Application of USA for PRTT Order*, No. 17-mc-
██, ECF No. 2 (granting first application in Misc. No. 17██).

directed to a WhatsApp account number." Supplement to Applications ¶¶ 2–4, *In re Application of USA for PRTT Order*, No. 17-mc-█████, ECF No. 7. As of February 28, 2018, the date on which the objection at issue was filed, no further order had been issued taking the supplemental material into account. Although the government had planned to await resolution of those six supplemental applications before objecting to the order in this matter, "because of the need for the order as part of an ongoing investigation, the government file[d] this objection seeking immediate relief." Obj. at 2–3.

### B.    Background Concerning WhatsApp

WhatsApp is a United States-based company that "provides messaging, Internet calling, and other services to users around the world" through WhatsApp Messenger, a cross-platform smartphone application. *Information for Law Enforcement Authorities*, WHATSAPP, https://faq. whatsapp.com/en/general/26000050/?category=5245250 (last visited March 2, 2018); *About WhatsApp*, WHATSAPP, https://www.whatsapp.com/about (last visited March 2, 2018). Messages and calls sent through WhatsApp Messenger are transmitted over the Internet by WhatsApp servers located in the United States. *See* Obj. at 3; *Features*, WHATSAPP, https://www.whatsapp.com/features (last visited March 2, 2018). Users may utilize either their cellular provider's data network or another data connection, such as their home wireless router or a public wireless hotspot, to connect to the application and exchange messages and calls on the application. *Features*, *supra* ("WhatsApp uses your phone's Internet connection to send messages so you can avoid SMS [short message service] fees.").

Upon registration, each WhatsApp account is given a unique account identifier. According to computer scientists in the Drug Enforcement Administration's Office of Investigative Technology, "after WhatsApp is downloaded to a smart phone capable of running mobile applications, a user must then input a phone number, which will be used by WhatsApp to

confirm the creation of the account." Obj. at 3; *see also Verifying Your Number*, WHATSAPP,

https://faq.whatsapp.com/en/iphone/20902747/?category=5245245 (last visited March 2, 2018)

("WhatsApp requires an active phone number to create an account."). WhatsApp accounts "can

only be verified with one number on one device," and "[t]here is no option to have a WhatsApp

account with two phone numbers." *Using One WhatsApp Account on Multiple Phones, or with*

*Multiple Phone Numbers*, WHATSAPP, https://faq.whatsapp.com/en/general/21009863/?category

=5245245 (last visited March 2, 2018). A user's WhatsApp account number is therefore "the

same as the inputted phone number." Obj. at 3; *see also id.* at 4 ("[A] WhatsApp account

number is numerically the same as the inputted phone number used to confirm the creation of the

account."). Users then utilize those account numbers to identify the intended recipients of

messages they are sending and to identify the senders of messages they receive. *Id.* at 4.

Importantly, a WhatsApp user need not have downloaded the application onto the device

associated with his or her registered phone number. For example, a user may use his or her

WhatsApp account on a different smartphone by logging into the application with his or her

registered phone number. *See Changing Phone Numbers and/or Phones*, WHATSAPP,

https://faq.whatsapp.com/en/general/28030001/?category=5245246 (last visited March 2, 2018)

("If you are moving from one type of phone to another, such as from an iPhone to an Android,

*and* preserving your number, you will keep your account info. This information is tied to the

phone number. Simply download WhatsApp on the new phone and verify your number.")

(emphasis in original). A user may also run a web-based version of the application by visiting a

website, opening the smartphone application on his or her phone, and using the phone to scan the

code displayed on the website to sync the two platforms. *How Do I Use WhatsApp on My*

*Computer?*, WHATSAPP, https://faq.whatsapp.com/en/web/26000012/?category=5245235 (last

visited March 2, 2018); *Pairing Your Phone with the WhatsApp on Desktop*, WHATSAPP,

https://faq.whatsapp.com/en/web/28080003/?category=5245235 (last visited March 2, 2018).

The messages sent and received through the web-based platform are then "fully synced between

your phone and your computer, and you can see all messages on both devices. Any action you

take on the phone will apply to WhatsApp on your computer and vice versa." *How Do I Use*

*WhatsApp on My Computer?*, *supra*.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(3), "[a] magistrate judge may be assigned such additional

duties as are not inconsistent with the Constitution and laws of the United States." As this matter

was not "referred" to a magistrate judge by a district court judge within the meaning of

§ 636(b)(1)(A) or (B), the order denying the government's application is an exercise of the

Magistrate Judge's "additional duties," pursuant to § 636(b)(3), in conjunction with this Court's

Local Criminal Rules 57.17(a) and 59.3, under which magistrate judges are granted the "duty"

and the "power" to "[i]ssue search warrants," as well as to "[i]ssue subpoenas . . . or other orders

necessary to obtain the presence of parties or witnesses or evidence needed for court

proceedings." LCrR 57.17(a)(3), (10). Pursuant to Local Rule 59.3(b), a "magistrate judge's

warrant or order for which review is requested . . . may be accepted, modified, set aside, or

recommitted to the magistrate judge with instructions, after de novo review by the Chief Judge."

LCrR 59.3(b); *see also In re Search of Information Associated with [redacted]@gmail.com That*

*Is Stored at Premises Controlled by Google, Inc.* ("*Google*"), No. 16-mj-757, 2017 WL

3445634, at *5 (D.D.C. July 31, 2017) ("Accordingly, because this case arises out of the

Magistrate Judge's 'additional duties' jurisdiction pursuant to § 636(b)(3), the Magistrate

Judge's order is subject to *de novo* review by the district court."); *In re U.S. for an Order*

*Pursuant to 18 U.S.C. § 2705(b)* ("*Airbnb*"), No. 17-mc-2490, 2018 WL 692923, at *3 (D.D.C.

Jan. 30, 2018) ("Magistrate judge orders issued under the SCA in unassigned criminal matters

are subject to *de novo* review.").

## III.    DISCUSSION

To address whether a PR/TT device may be installed and used on a WhatsApp account

when only the WhatsApp account number is specified in the application, the applicable statutory

framework is first reviewed, followed by analysis showing, consistent with the government's

explanation for its objection, that a WhatsApp account number is sufficient information to

authorize the installation and use of a PR/TT device on a specific WhatsApp account.

### A.    Statutory Framework

The Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. No. 99-508, 100

Stat. 1848, expands to electronic communications certain protections that are afforded to wire

and oral communications by Title III of the Omnibus Crime Control and Safe Streets Act of

1968, Pub. L. No. 90-351, 82 Stat. 211.  In particular, Title III of ECPA, codified in chapter 206

of Title 18, at 18 U.S.C. §§ 3121–27, "addresses pen register and trap and trace devices," requiring

government entities to obtain a court order authorizing their installation. S. REP. NO. 99-541, at 3

(1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3557; *see also* 18 U.S.C. § 3121(a) ("[N]o person

may install or use a pen register or a trap and trace device without first obtaining a court order

under section 3123 of this title or under the Foreign Intelligence Surveillance Act of 1978.").

To obtain an order authorizing the use or installation of a PR/TT device, an "attorney for

the Government" must submit an application, "in writing under oath or equivalent affirmation, to

a court of competent jurisdiction."  18 U.S.C. § 3122(a)(1).  That application must include (1) "the

identity of the attorney for the Government or the State law enforcement or investigative officer

making the application," (2) "the identity of the law enforcement agency conducting the

7

investigation," and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." *Id.* § 3122(b).[3] Upon receipt of a satisfactory application, "the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States," which order "shall apply to any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate the execution of the order." *Id.* § 3123(a)(1).[4]

PR/TT devices were initially "given narrow definitions limited to the capture of telephone numbers." *In re U.S. for Orders Authorizing Installation & Use of Pen Registers*, 416 F. Supp. 2d 390, 394 (D. Md. 2006); *see also* S. REP. NO. 99-541 at 10, *reprinted in* 1986 U.S.C.C.A.N. at 3564 ("Pen registers are devices that record the telephone numbers to which calls have been placed from a particular telephone. . . . [T]rap and trace devices [ ] record the numbers of telephones from which calls have been placed to a particular telephone."). Those statutory definitions were "significantly broadened" by the USA PATRIOT Act of 2001, Pub. L. No. 107-56, 115 Stat. 272, and now encompass newer types of communications as well. *In re Application of U.S. for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone*, 460 F. Supp. 2d 448, 455 (S.D.N.Y. 2006); *see also id.* at 456 ("[T]he

---

[3]     The government's application satisfies these basic requirements. *See* App. ¶¶ 3–5.
[4]     Orders authorizing PR/TT devices must specify (1) "the identify, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied"; (2) "the identity, if known, of the person who is the subject of the criminal investigation"; (3) "the attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, and, in the case of an order authorizing installation and use of a trap and trace device under subsection (a)(2), the geographic limits of the order"; and (4) "a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates." 18 U.S.C. § 3123(b)(1). The government's proposed order satisfies these requirements. *See generally* Obj., Ex. 1, Proposed Order, ECF No. 3-1. Although "the subscriber of [the subject account] is unknown," *id.* at 1, the government learned, from a cooperating witness "of proven reliability," that the subject account was used by an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮   App. ¶ 18.

House Report on the Patriot Act indicates that Congress did intend the new definitions of pen registers and trap and trace devices to apply to all communications media, not just email.").

Under the current definitions, a "pen register" is defined as "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," but which does not include the contents of any communication. 18 U.S.C. § 3127(3). A "trap and trace device" is defined as "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication," again not including the contents of any communication. *Id.* § 3127(4). "Electronic communication" is, in turn, defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." *Id.* § 2510(12).

Relying on these definitions, courts have recognized that PR/TT devices can be used to collect information from many different types of "instrument[s] or facilit[ies]" for electronic communications. *See, e.g., United States v. Forrester*, 512 F.3d 500, 504 (9th Cir. 2008) (concluding that "computer surveillance that enabled the government to learn the to/from addresses of [the defendant's] e-mail messages, the Internet protocol ('IP') addresses of the websites that he visited and the total volume of information transmitted to or from his account" was "analogous to the use of a pen register"); *Meisler v. Chrzanowski*, 2013 WL 5375524, at *14 (D. Nev. Sept. 24, 2013) (noting that "Title III of the ECPA . . . regulates the collection of addressing and other non-content information," including "phone numbers dialed from or to a

9

particular telephone . . . and its counterpart in internet communications"); *In Matter of*

*Application of U.S. for an Order Authorizing the Installation & Use of a Pen Register & a Trap*

*& Trace Device on E-Mail Account* ("*In re E-Mail Account*"), 416 F. Supp. 2d 13, 16–17

(D.D.C. 2006) (authorizing installation and use of PR/TT devices on an e-mail account); *In re*

*Application of U.S. for an Order Authorizing the Use of a Pen Register & Trap on [xxx] Internet*

*Service Account/User Name [xxxxxxxx@xxx.com]*, 396 F. Supp. 2d 45, 49–50 (D. Mass. 2005)

(authorizing the use of PR/TT devices on internet service accounts).

> **B.**     **PR/TT Devices May Be Used on WhatsApp Accounts Designated by Only
>             Their WhatsApp Account Numbers**

    With this framework in mind, the government's objection to the Magistrate Judge's order

must be sustained.  As a threshold matter, PR/TT devices may be installed and used on WhatsApp

accounts.  The government correctly notes that, "[s]imilar to the way BlackBerry Messenger

users use BlackBerry PINs, or E-mail users utilize E-mail addresses, WhatsApp users utilize

WhatsApp account numbers to identify the intended recipient of the messages that they send as

well as the sender of messages that they receive."  Obj. at 4 (citing *In re E-Mail Account*, 416 F.

Supp. 2d at 16).  The messages sent between WhatsApp users are undoubtedly electronic

communications, as they are "transfer[s] of signs, signals, writing, images, sounds, data, or

intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic,

photoelectronic or photooptical system that affects interstate or foreign commerce."  18 U.S.C.

§ 2510(12).  Thus, pen registers, which by definition "record[ ] outgoing signals from an

instrument or facility that transmits 'electronic communication,'" and trap and trace devices,

which by definition "capture incoming electronic impulses to identify the source of an

'electronic communication,'" *In re E-Mail Account*, 416 F. Supp. 2d at 15–16 (quoting 18 U.S.C.

§ 3127(3)–(4)), can be installed and used on WhatsApp accounts in the same way they are

installed and used on any other "instrument or facility from which a wire or electronic

communication is transmitted," 18 U.S.C. § 3127(3), such as an e-mail account.

The reasoning of this Court in *In re E-Mail Account*, 416 F. Supp. 2d 13 (D.D.C. 2006),

is instructive. In that case, the Court explained that the pen register statute applies to e-mail

communications because the statutory definitions of "pen register" and "trap and trace device"

"make clear that both a pen register and a trap and trace device may be a 'process' used to gather

information relating to 'electronic communication.'" *Id.* at 16 (quoting 18 U.S.C. § 3127(4))

(footnote omitted). Thus, the Court concluded, "[g]iven that the statute defines an electronic

communication to be any 'transfer of signals' of 'any nature' by means of virtually any type of

transmission system (*e.g.*, wire, electromagnetic, etc.), there can be no doubt it is broad enough

to encompass e-mail communications and other similar signals transmitted over the Internet."

*Id.* PR/TT devices therefore can "be processes used to gather information about e-mail

communications." *Id.*

In denying the government's application, the Magistrate Judge highlighted the fact that

the application "does not provide the cellular telephone number associated with the designated

WhatsApp account" and does not "identify the provider of such cellular telephone service,

seemingly utilizing 'WhatsApp' and 'Service Provider' interchangeably." Consolidated Order at

2. Neither reason warrants denial of the application. Importantly, the government is seeking

only WhatsApp information—that is, "information related to communications occurring over

WhatsApp servers located in the United States," Obj. at 4—rather than information regarding the

cellular telephone number and cellular service provider for the user in question. As already

discussed, a WhatsApp account number is the same as the phone number used to create the

WhatsApp account. Thus, by providing the WhatsApp account number, the government has

"provide[d] the cellular telephone number associated with the designated WhatsApp account,"

Consolidated Order at 2, thereby alleviating the Magistrate Judge's concerns. Indeed, in stating

its policy regarding law-enforcement requests for records, WhatsApp itself notes that "[a]ll

requests must identify requested records with particularity and include," *inter alia*, "[t]he

*WhatsApp account number* (including any applicable country codes . . . )" for the account in

question. *Information for Law Enforcement Authorities*, *supra* (emphasis added). That number,

which is also the cellular telephone number for the user at issue, properly was provided in the

government's application. *See* App. at 1; *id.* ¶ 17.

The Magistrate Judge also stated that the government did not "identify the provider of [ ]

cellular telephone service" for the device associated with the designated WhatsApp account.

Consolidated Order at 2. Given the information the government seeks, however, WhatsApp is

the relevant service provider. Under the pen register statute, an order authorizing a PR/TT

device "shall apply to any person or entity providing wire or electronic communication service in

the United States." 18 U.S.C. § 3123(a)(1). By "provid[ing] users with the ability to send and

receive electronic communications to each other," *Airbnb*, 2018 WL 692923, at *5, through the

WhatsApp Messenger application, WhatsApp is providing an electronic communications

service.[5] Thus, because the government seeks only "information associated with each access to,

---

[5]     WhatsApp also holds itself out to customers as a provider of electronic communications services. *See Information for Law Enforcement Authorities*, *supra*. The company states that "[a] valid subpoena issued in connection with an official criminal investigation is required to compel the disclosure of basic subscriber records (defined in 18 U.S.C. Section 2703(c)(2))"; "[a] court order issued under 18 U.S.C. Section 2703(d) is required to compel the disclosure of certain records or other information pertaining to the account, not including contents of communications"; and "[a] search warrant issued under the procedures described in the Federal Rules of Criminal Procedure or equivalent state warrant procedures upon a showing of probable cause is required to compel the disclosure of the stored contents of any account." *Id.*

12

and each communication to or from," a specific WhatsApp account, App. at 1, WhatsApp is the

appropriate entity to provide the requested information.[6]

## IV.    CONCLUSION

For the reasons stated above, the government's objection is sustained, the Magistrate

Judge's Order dated February 5, 2018, is reversed, and the government's application, pursuant to

18 U.S.C. §§ 3122 and 3123, for an order authorizing a PR/TT device is granted.  The

government is directed, by March 12, 2018, to review this Memorandum Opinion and the entire

record in this matter and advise the Court of which docket entries may be unsealed in whole or in

part, with proposed redactions as necessary to protect any ongoing criminal investigations.  An

appropriate Order, which is filed under seal, accompanies this Memorandum Opinion.

Date: March 2, 2018

_Beryl A. Howell_

BERYL A. HOWELL
Chief Judge

---

[6]     In support of its argument, the government notes that "the Chief Judge of this Court has recently reviewed and approved the use of various templates, including templates for pen register and trap and trace applications and orders in different contexts, such as e-mail and social media." Obj. at 5–6. The government seemingly understands this approval as "underscoring the conclusion that the statute does not require the government to submit a telephone number and its service provider to obtain an order for web-based communications." _Id._ at 6. Those templates are not intended to serve as shibboleths, requiring the grant of an application merely because the template was used. Rather, as specific legal issues arise, those templates may require modification and do not purport to pre-judge the resolution of particular issues that may arise in specific cases.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE APPLICATION OF USA FOR PRTT ORDER FOR ONE WHATSAPP ACCOUNT FOR INVESTIGATION OF VIOLATION OF 21 U.S.C. 841** | **Misc. No. 18-pr-17**<br><br><br>**Filed Under Seal** |

### ORDER

Anthony F. Scarpelli, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on the WhatsApp, Inc. ("WhatsApp") account identified as WhatsApp Account ███████ the subscriber of which is unknown (hereinafter "SUBJECT ACCOUNT"), which is believed to be used by one or more persons identified in Attachment A.

THE COURT FINDS that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter "Agency") of the person(s) indicated in Attachment A, which is incorporated into this Order by reference, and others as yet unknown or not fully identified, in connection with possible violations of Title 21, United States Code, Sections 841(a)(1) and 846. The Court further finds that a sufficient showing of good cause has been made for the continued sealing of Attachment A and for the government's withholding of Attachment A from service upon the Service Provider, in order to help ensure the privacy of the person(s) identified therein and the integrity of the government's investigation.

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that the Agency is authorized to install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from, the SUBJECT ACCOUNT, including the date, time, and duration of the communication, without geographic limit;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that WhatsApp (hereinafter "Service Provider") and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that Attachment A shall remain under seal even as to the Service Provider until further order of the Court, and therefore shall be withheld from service upon the Service Provider;

IT IS FURTHER ORDERED that the Agency reasonably compensate the Service Provider and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that the Service Provider and any other person or entity whose assistance may facilitate execution of this Order, notify the applicant and the Agency of any changes relating to the SUBJECT ACCOUNT, including changes to subscriber information,

-2-

and to provide prior notice to the Agency before terminating or changing service to the SUBJECT ACCOUNT;

IT IS FURTHER ORDERED that the Agency and the applicant are authorized to have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the Agency, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that the Service Provider and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and the Court's Order, the pen-trap devices, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Service Provider may disclose the Order to an attorney for the Service Provider for the purpose of receiving legal advice;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request;

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

Date: March 2, 2018

Beryl A. Howell

BERYL A. HOWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
FOR THE DISRICT OF COLUMBIA

-3-

## ATTACHMENT A

Person(s) identified as subject(s) of investigation:

Unknown Female and Unknown Male